EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> José E. Moreno Cortés | Queja <br><br> 2003 TSPR 91 <br><br> 159 DPR _____ |

Número del Caso: AB-2002-57

Fecha: 20/mayo/2003

Oficina del Procurador General:
                        Lcda. Noemí Rivera De León
                        Procuradora General Auxiliar

Abogado de la Parte Querellada:
                        Por Derecho Propio

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

José E. Moreno Cortés

AB-2002-57

PER CURIAM

San Juan, Puerto Rico a 20 de mayo de 2003

Con fecha 7 de noviembre de 2002 el Procurador General nos rindió un Informe relacionado con una sentencia emitida por el Tribunal de Circuito de Apelaciones, Panel Regional VI Caguas/ Humacao/Guayama (en adelante Tribunal de Circuito), el 28 de febrero de 2002, en el caso de Ramón Dieppa Rodríguez v. Reliable Financial Services, Inc., KLRA01-00788.

Dicha sentencia surge de una revisión administrativa de una resolución emitida por el Departamento de Asuntos del Consumidor (en adelante

D.A.C.O.) relacionada con un contrato de compraventa de un vehículo adquirido de Centro Auto Motores Corp. (en adelante Centro Auto) por el Sr. Ramón Dieppa Rodríguez. Seis (6) meses después de haber adquirido el vehículo, el señor Dieppa Rodríguez presentó una querella ante D.A.C.O. contra Centro Auto y Reliable Financial Services. Alegó que había tenido múltiples inconvenientes, no atribuibles a él, para poder inscribir el vehículo a su nombre y que se le otorgara la correspondiente licencia. Solicitó la cancelación del contrato de compraventa y la devolución de lo pagado.

Luego de una serie de trámites procesales se celebró una vista administrativa ante el Juez Administrativo José E. Moreno Cortés. El licenciado Ruiz Cabán, abogado de Centro Auto, relató ante el Tribunal de Circuito que en una ocasión coincidió con el Lcdo. Carlos A. Velázquez Ramírez, abogado del señor Dieppa Rodríguez, y que al preguntarle si le habían notificado la resolución de D.A.C.O. en el caso, este le contestó que con toda probabilidad iba a demorarse varios meses, ya que él había entrado en negociaciones con el licenciado Moreno Cortés, el Juez Administrativo en el caso, para que trabajaran juntos en sus oficinas. Manifestó que entendía que el licenciado Moreno Cortés no iba a emitir la resolución el caso.

El 7 de noviembre de 2001, D.A.C.O. emitió la resolución en el caso. Ésta estaba suscrita por el licenciado Moreno Cortés como Juez Administrativo. También aparecía firmando la misma la Lcda. Ruth Fonseca Benítez, Directora de la Oficina Regional de Caguas. Además, aparecía el nombre del Lcdo. Fernando L. Torres Ramírez, Secretario de D.A.C.O., aunque éste no firmaba la

resolución.  En dicha resolución se concedieron varios remedios al querellante señor Dieppa Rodríguez.

Al momento en que se emitió la resolución y presentó el recurso de revisión ante el Tribunal de Circuito, el licenciado Moreno Cortés, el Ex Juez Administrativo, se encontraba trabajando en las oficinas del licenciado Velázquez Ramírez, abogado del señor Dieppa Rodríguez.  Insatisfecho con este dictamen, Centro Auto recurrió ante el Tribunal de Circuito planteando como único error el siguiente:

> Erró el Juez Administrativo José E. Moreno Cortés al no inhibirse de emitir la Resolución cuya revisión aquí se solicita y así evitar la evidente y grave apariencia de conflicto de intereses, pues el Juez Administrativo había iniciado conversaciones con el abogado de la parte querellante para incorporarse a trabajar junto a él desde sus oficinas en Caguas.

Finalmente, el Tribunal de Circuito revocó la resolución de D.A.C.O. y devolvió el caso al foro administrativo para la celebración de nueva vista y nos refirió la sentencia para la acción que estimásemos pertinente respecto a la conducta profesional de los licenciados Moreno Cortés y Velázquez Ramírez.

Con relación a este asunto indicó el licenciado Velázquez Ramírez que se enteró que el entonces Juez Administrativo Moreno Cortés estaba pensando renunciar a D.A.C.O. y que por eso le ofreció que se fuera a trabajar con él, ya que en sus oficinas necesitaba un abogado con experiencia en vistas administrativas, especialmente en D.A.C.O.  El 29 ó 30 de octubre de 2001, el licenciado Moreno Cortés aceptó la oferta y acordaron que comenzaría a trabajar en las oficinas del licenciado Velázquez Ramírez el 19 de noviembre de 2001.

El 23 de noviembre el licenciado Velázquez Ramírez recibió la Resolución de D.A.C.O., la cual fue emitida el 7 de noviembre y notificada el 20 de ese mismo mes. Indicó el licenciado Velázquez Ramírez que le preguntó al licenciado Moreno Cortés:

> por qué había firmado la resolución si ya había decidido que iba a trabajar con él y el Lic. Moreno [Cortés] le respondió que él sólo había preparado un proyecto de resolución, según se lo había ordenado la directora de la Oficina después de ésta haber tenido el expediente y las cintas grabadas del caso en su oficina por un periodo de varias semanas.[1]

Continuó explicando que entendió que la licenciada Fonseca Benítez estuvo de acuerdo con el proyecto de resolución luego de leer el expediente y escuchar las grabaciones, por lo que procedió a firmarlo y notificarlo.

El licenciado Moreno Cortés, por su parte, declaró que ya para el mes de octubre de 2001 hacía varios meses que había estado considerando renunciar a su trabajo en D.A.C.O., pues había solicitado traslado a la Oficina Regional de Arecibo, para estar más cerca de su familia y se lo habían denegado. Indicó que él conoce al licenciado Velázquez Ramírez ya que éste trabajó en D.A.C.O. durante el tiempo en que él fue Director Regional. Expresó que el 9 de octubre de 2001 el licenciado Velázquez Ramírez se enteró que él había presentado su renuncia y que fue entonces que le hizo un acercamiento para que se fuera a trabajar con él a sus oficinas.

Alega que ese mismo día consultó con la Directora Regional, licenciada Fonseca Benítez, sobre este asunto, ya que tenía tres (3) expedientes sometidos y pendientes de resolución en casos en los cuales el licenciado Velázquez Ramírez era el abogado de una de

las partes. La licenciada Fonseca Benítez le dijo que iba a evaluar la situación. Al día siguiente ésta le envió un memorando en el cual condicionaba referir su renuncia al trámite administrativo correspondiente a que él sometiese un inventario "con lujo de detalles" sobre los casos que tenía asignados e informase el trámite y el status de los casos en que intervino el licenciado Velázquez Ramírez. En dicho memorando, en letras ennegrecidas y con relación a estos casos, se decía: "[en] donde se haya celebrado vista administrativa y no se haya emitido resolución, el expediente íntegro me será entregado de inmediato, sin que medie ninguna otra acción de su parte." El licenciado Moreno Cortés procedió a entregar los expedientes. Continuó aseverando que faltando una semana para finalizar sus labores en D.A.C.O., la Sra. Cándida Cintrón, secretaria de la licenciada Fonseca Benítez, por orden de ésta, le devolvió los expedientes y le dijo que antes de finalizar sus labores con D.A.C.O. tenía que preparar proyectos de resoluciones en los casos.

Luego de escuchar las grabaciones y evaluar la prueba documental preparó los proyectos de resolución. Alega que ésta fue la última vez que tuvo contacto con los expedientes. En **cuanto a haber firmado las resoluciones alega que él sólo cumplió con las órdenes de la Directora Regional, que solamente las redactó y firmó según el trámite administrativo y las sometió para que fueran evaluadas por la Agencia.**

Con relación a la conducta profesional del licenciado Velázquez Ramírez, estamos de acuerdo con el Procurador General que de los hechos antes expuestos no surge que éste hubiese incurrido

---

[1]     **Véase Informe del Procurador General.**

en conducta antiética alguna. También estamos de acuerdo con el Procurador General en cuanto a que tan pronto el licenciado Moreno Cortés recibió la oferta de trabajo del licenciado Velázquez Ramírez y éste contempló la posibilidad de aceptarla, **era su deber ético inhibirse** en los casos en que el licenciado Velázquez Ramírez representase a una de las partes.

Con lo que no podemos estar de acuerdo con el Procurador General es con su conclusión de que como el licenciado Moreno Cortés "se limitó a seguir las órdenes de su superior ... no encontr[ó] que [hubiera] incurrido en violación ética alguna".[2] Entendió el Procurador:

> **que el no haber solicitado la inhibición en los casos en los que intervino el licenciado Vázquez [Ramírez], fue producto de un error de juicio,** no intencional, por parte del [licenciado Moreno Cortés] al [éste] creer de buena fue [sic], **que al cumplir con las instrucciones de su jefe, se evitaría incurrir en cualquier apariencia de conducta impropia.** (Énfasis nuestro.)[3]

Este caso nos permite analizar la conducta profesional de un abogado que como funcionario público lleva a cabo actividades cuasijudiciales adjudicando controversias en una agencia administrativa, D.A.C.O., un Juez Administrativo. Éstos son los encargados de mantener la fe de los ciudadanos en la justicia que imparte esta agencia especializada. Los Jueces Administrativos tienen que estar concientes de la delicada labor de impartir justicia que ejercen y velar porque sus actuaciones siempre respondan a las normas de conducta que estimulen el respeto y la confianza del Pueblo en la función que llevan a cabo. Al igual que un Juez que lleva su ministerio en la Rama Judicial, el Juez

---

[2]     **Véase Informe del Procurador General, pág. 9.**

(Continúa . . .)

Administrativo, al entender en una controversia, tiene que ser prudente, sereno, imparcial y cuidadoso, esforzándose al máximo de su capacidad para evitar hasta la apariencia de conducta impropia, aunque al así hacer conlleve sacrificios personales. Canon 38 de Ética Profesional, 4 L.P.R.A. Ap. IV-A.

**No cabe la menor duda que la imparcialidad en el ejercicio de sus funciones es una de las características esenciales del Juez Administrativo. Cualquier actuación que proyecte visos de parcialidad o arbitrariedad o la apariencia de conducta impropia, afecta su imagen y la fe del Pueblo en este sistema paralelo de impartir justicia y resolver controversias. Además, subvierte la fe de la ciudadanía en un importante sector de las instituciones que tienen a su cargo la pacífica solución de los conflictos, las agencias administrativas.** El ejercicio de la práctica de la profesión de abogado, en este caso como Juez Administrativo, requiere en todo momento celo, cuidado y prudencia. <u>In re:</u> <u>Rodríguez Torres</u>, 104 D.P.R. 104, 758, 765 (1976).

Cabe señalar, que **la responsabilidad de un abogado por el cumplimiento con las normas de ética profesional es una personal e indelegable. El abogado viene obligado a cumplir celosamente con este deber. No puede constituir una excusa para su incumplimiento con el deber ético profesional, el que estaba siguiendo órdenes de su jefe o cumpliendo con los deseos de un cliente.**

En la situación ante nuestra consideración, tan pronto el licenciado Moreno Cortés comenzó a hablar con o contempló la posibilidad de entrar en conversaciones con el licenciado Velázquez Ramírez para ir a trabajar a las oficinas de éste, debió

---

[3]     **<u>Ibid.</u>**

haberse inhibido en todos los casos en que éste representara a una de las partes. También tenía el deber de informarle esta situación al abogado de las otras partes y a sus jefes. El Canon 35 exige de los miembros de la profesión legal que sus relaciones con sus compañeros sean sinceras y honradas. Bajo las circunstancias de este caso la inhibición del licenciado Moreno Cortés no podía depender de una autorización de sus jefes.

Los hechos antes expuestos, sin embargo, no reflejan que la conducta del licenciado Moreno Cortés fuese una intencional motivada por lucro personal. Siendo ésta la primera vez que confrontamos una situación de esta naturaleza, limitaremos la sanción disciplinaria a una censura y un apercibimiento de que una conducta similar en el futuro conllevará medidas disciplinarias más severas.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

  José E. Moreno Cortés

                              AB-2002-57

                              SENTENCIA

San Juan, Puerto Rico a 20 de mayo de 2003

      Por los fundamentos expuestos en la Per Curiam que antecede, se dicta sentencia censurando al Lcdo. José E. Moreno Cortés y se le apercibe que en el futuro una conducta similar conllevará medidas disciplinarias más severas.

      Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton disiente sin opinión escrita.

                    Patricia Otón Olivieri
                 Secretaria del Tribunal Supremo